**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-7709**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRELL ANTHONY HARGROVE, a/k/a Rell,

Defendant - Appellant.

**No. 20-7726**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRELL ANTHONY HARGROVE, a/k/a Rell,

Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., Senior District Judge. (3:06-cr-00026-JAG-1; 3:18-cr-00001-JAG-1)

Argued: December 9, 2021                    Decided: March 29, 2022

Before GREGORY, Chief Judge, and NIEMEYER and QUATTLEBAUM, Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Gregory and Judge Quattlebaum joined.

---

**ARGUED:** Joseph Stephen Camden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Jacqueline Romy Bechara, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Raj Parekh, Acting United States Attorney, Alexandria, Virginia, Joseph Attias, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

NIEMEYER, Circuit Judge:

On July 7, 2020, Terrell Hargrove, a 36-year-old inmate at Federal Medical Center Devens in Massachusetts, filed a motion for compassionate release from prison, under 18 U.S.C. § 3582(c)(1)(A)(i), alleging in support of it:

– that FMC Devens had "just recently reported positive COVID-19 test results";

– that he has asthma, high blood pressure, and obstructive sleep apnea, making it "reasonably probable" that he will suffer "severe complications" if he were to contract COVID-19; and

– that he has a "clean disciplinary record," has "participated in extensive programming," and has a "concrete release plan."

Hargrove was serving a 103-month sentence of imprisonment, which consisted of a 46-month component imposed for a drug-trafficking conviction and a 57-month component imposed for his violation of the conditions of his supervised release, which had been imposed in connection with an earlier drug-trafficking conviction.

The district court denied Hargrove's motion, finding principally (1) that because his medical conditions only "*might* increase Hargrove's risk" of experiencing serious illness from COVID-19, he failed to establish an "extraordinary and compelling reason" for release; and (2) that the factors of 18 U.S.C. § 3553(a) did not, in any event, support his release.

Hargrove contends on appeal that the district court erred by (1) applying a "bright-line rule" that if a medical condition was not included in the CDC's highest risk category[*] with respect to COVID-19, it could *never* qualify as an "extraordinary and compelling reason" for release; (2) considering § 3553(a) factors that may not be applied when imposing a *revocation* sentence; and (3) failing to address Hargrove's rehabilitation efforts and explain why the court gave them no weight in applying the § 3553(a) factors.

While we agree with Hargrove that application of a bright-line rule based on CDC risk categories would be overly restrictive, we conclude that the district court did not apply such a rule and otherwise did not abuse its discretion in denying Hargrove's motion. Accordingly, we affirm.

I

Hargrove's 103-month sentence was imposed on May 25, 2018, and 25 months later, he filed this motion for compassionate release on the ground that COVID-19 had just arrived at FMC Devens, where he was serving his sentence. While his motion was pending, he was transferred to USP Yazoo City in Mississippi, which, he alleged, was also "in the midst of an ongoing [COVID-19] outbreak." He claimed that, based on his medical conditions, it was "reasonably probable" that he would suffer "severe complications" should he contract COVID-19, which, he maintained, was likely given its presence in each facility.

---

[*] "CDC" refers to the Centers for Disease Control and Prevention, a public health agency of the United States.

4

The medical records attached to Hargrove's motion showed that he had been diagnosed with asthma and obstructive sleep apnea, which were currently well controlled with an inhaler and a continuous positive airway pressure (CPAP) machine, respectively. The records further indicated that while some of Hargrove's blood pressure readings had been high, he had not been diagnosed with hypertension.

In addition to arguing that his risk of becoming seriously ill from COVID-19 established an "extraordinary and compelling" reason warranting his immediate release, Hargrove also claimed in his motion that the § 3553(a) factors favored such relief. He asserted that he did not have "a single disciplinary violation during his current term" of imprisonment; that he had "participated in extensive programming," completing numerous classes as well as a non-residential drug treatment program; and that he had both "a concrete release plan" and "family support." His wife also submitted two letters to the court describing the Hargrove family's fear for his safety and relating that she herself had health problems that had required her to undergo "major surgery every year since 2014" and would require another surgery in the next few months.

While Hargrove briefly addressed his prior criminal behavior, providing some explanation for his conduct, his response to his criminal history was mainly a promise that if he were released, he would "not go back to the streets." His criminal history, however, is long and continuous, beginning when he was 12 years old. The operative conduct for this case began in the fall of 2005 when he was arrested for trafficking in cocaine base and possessing a firearm in furtherance of drug trafficking. In July 2006, after he was convicted based on his guilty plea, the district court imposed a sentence of 144 months' imprisonment

and 5 years of supervised release. Subsequent to his sentencing, however, the court twice granted Hargrove's motions for a reduction of his sentence, ultimately reducing it to the mandatory minimum of 120 months' imprisonment.

In July 2015, Hargrove was released from prison and began his 5-year term of supervised release. Less than six months later, however, he was found to have violated the conditions of his release by committing two domestic violence assault offenses. For those violations, the court sentenced him to 12 months' imprisonment to be followed by 4 years of supervised release. Hargrove began serving that new term of supervised release in November 2016.

Less than a year later, however, starting in September 2017, Hargrove repeatedly trafficked in heroin, leading to his arrest in December 2017. He subsequently pleaded guilty to distributing heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). At the sentencing hearing on May 25, 2018, the court imposed a sentence of 46 months' imprisonment — a sentence at the top of the advisory Sentencing Guidelines range. The court also found that by trafficking heroin, Hargrove had again violated the conditions of his supervised release and imposed an additional sentence of 57 months' imprisonment, also at the top of the advisory sentencing range for the supervised release violation. The court required that the sentences be served consecutively, for a total sentence of 103 months' imprisonment.

When imposing those sentences, the court recognized that Hargrove had made some attempts to change his life since his release from federal prison. For instance, he had been "steadily employed" and had been supporting his family. The court also recognized the

6

support that Hargrove had received from friends and family members, who had written letters on his behalf and attended the hearing. But the court explained that Hargrove's case was also "troubling" and "unusual" because Hargrove "was already on supervised release" following a lengthy term of imprisonment for participating in a drug-trafficking conspiracy when he went "back to doing this kind of conduct" and sold "hundreds of doses" of heroin.

Hargrove appealed the 57-month revocation sentence, contending that the district court relied on impermissible factors when imposing that portion of his sentence, in contravention of 18 U.S.C. § 3583(e). We rejected the argument and affirmed. *See United States v. Hargrove*, 746 F. App'x 226, 227–28 (4th Cir. 2018) (per curiam).

After serving about 31 months of his 103-month sentence, Hargrove filed the same motion for compassionate release in both of his criminal cases.

The government opposed Hargrove's motion. While it recognized the spread of COVID-19, it asserted that in response the Bureau of Prisons ("BOP") was "actively working on the critical problem of containing the spread of the coronavirus within prisons" by, "among other steps, limit[ing] access to prisons, restrict[ing] prisoner movements within prisons, us[ing] screening and testing, s[eeking] to educate inmates and staff on preventing the spread of disease, provid[ing] masks and hand cleaners, separat[ing] ill inmates, and — in appropriate cases — releas[ing] inmates for home confinement." The government also maintained that Hargrove's medical conditions did not establish "extraordinary and compelling reasons" warranting his release. Finally, it argued that the § 3553(a) factors "counsel[ed] against release, at this time," maintaining that releasing

7

Hargrove, after he had "served less than a third of his sentence," would "ignore[] the risk of recidivism and the risk he poses to the community."

By a memorandum order dated November 2, 2020, the district court denied Hargrove's motion. It concluded that, based on CDC guidance, Hargrove's medical conditions "*might* place him at greater risk of serious illness or death from COVID-19" and held that "medical conditions that *might* increase Hargrove's risk do not establish an extraordinary and compelling reason for immediate release." The court also held that "[g]ranting Hargrove's motions would serve none of the[] goals" set forth in § 3553(a)(2), the most relevant of which, the court stated, were the requirements that sentences "'reflect the seriousness of the offense,' 'promote respect for the law,' 'afford adequate deterrence,' and 'protect the public.'"

From the district court's order, Hargrove filed this appeal, presenting three arguments. *First*, he argues that the district court abused its discretion by "set[ting] a bright-line rule that conditions not listed in the CDC's highest [risk] category . . . can never qualify as extraordinary and compelling reasons to reduce a sentence." *Second*, he argues that the district court "erred in considering retributive factors [set forth in § 3553(a)(2)(A)] in deciding whether to reduce" his sentence when, under 18 U.S.C. § 3583(e), those factors could not be considered when imposing a revocation sentence for supervised release violations. And *third*, he contends that the district court failed to explain "why [his] exemplary conduct in prison and efforts at rehabilitation since his original sentencing were given no weight under the § 3553(a) factors."

8

## II

The governing principles are not disputed. A sentencing court may not, as a general matter, "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But Congress has provided a few exceptions, including by giving district courts discretionary authority to reduce a sentence when the court finds that "extraordinary and compelling reasons warrant" the reduction — what is commonly known as the compassionate-release exception. *Id.* § 3582(c)(1)(A)(i). Specifically, as revised by the First Step Act of 2018, the compassionate-release provision states that, upon receiving a motion filed by either the BOP or the defendant, the court "*may* reduce the term of imprisonment . . . [1] *after considering* the factors set forth in section 3553(a) to the extent that they are applicable, [2] *if it finds* that . . . extraordinary and compelling reasons warrant such a reduction . . . *and* [3] [*if it finds*] that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (emphasis added). As we have recognized, however, "there currently exists no 'applicable policy statement[]'" that governs a *defendant's* motion for compassionate release, as distinct from a motion filed by the BOP on an inmate's behalf. *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020). Nonetheless, U.S.S.G. § 1B1.13 "remains helpful guidance even when motions are filed by defendants." *Id*. at 282 n.7.

"Thus, as it currently stands, a court *may* find a defendant who filed a motion [for compassionate release] *eligible* for a sentence reduction after finding only that such a reduction is warranted by extraordinary and compelling reasons." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (emphasis added). But then "it is still not required to

9

grant the defendant's motion for a sentence reduction. Rather, it must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

We review a district court's ruling on a § 3582(c)(1)(A)(i) motion for compassionate release for abuse of discretion. *See High*, 997 F.3d at 185; *United States v. Kibble*, 992 F.3d 326, 329 (4th Cir. 2021) (per curiam). And "a district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (cleaned up); *see also High*, 997 F.3d at 185, 187; *Kibble*, 992 F.3d at 332.

With these governing principles in hand, we now consider Hargrove's arguments.

A

Hargrove contends first that, in concluding that he had not established an extraordinary and compelling reason for compassionate release, the district court abused its discretion "by limiting the medical conditions it considered [only] to the CDC's highest tier." He argues that instead of considering preliminary studies indicating that one of his conditions (sleep apnea) "creates a risk of severe complications" from COVID-19, the court "simply set a bright-line rule that conditions not listed in the CDC's highest category, no matter the conditions of the prison and risk of infection, can never qualify as extraordinary and compelling reasons to reduce a sentence."

10

We agree with Hargrove's argument that use of a bright-line rule that accepts only the CDC's highest risk conditions is too restrictive. But we conclude that the premise that the court applied such a bright-line rule is not supported by the district court's ruling. Indeed, in pressing the argument, Hargrove only deflects from the insufficiency of his showing.

In his motion, Hargrove argued that in the context of a prison facility where COVID-19 was present, it was "likely" that he would contract the virus and that should he do so, it was "reasonably probable" that his asthma, high blood pressure, and obstructive sleep apnea would cause him to "suffer . . . severe complications." And to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release, he relied on CDC data, noting, for instance, that "[a]sthma is among the specific conditions listed by the CDC that *may* place an infected person at increased risk of complications and death from COVID-19." (Emphasis added). Similarly, he noted that "[h]igh blood pressure (hypertension) is also listed by the CDC as a condition that *may* place an infected person at increased risk of complications and death from COVID-19." (Emphasis added). Finally, with respect to his obstructive sleep apnea, he provided no CDC data, as there were none. Rather, he stated, "Not as much research has been done on . . . patients with obstructive sleep apnea and the risk of complications from COVID-19. However, two preliminary studies indicate[] that obstructive sleep apnea '*may* be a risk factor for mortality or deteriorate the clinical scenario in COVID-19.'" (Emphasis added).

In assessing whether, in light of the virus's spread, these medical conditions amounted to an extraordinary and compelling reason for compassionate release from

11

prison, the district court noted that "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to [COVID-19] and a particularized risk of contracting the disease at his prison facility." (Quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)). Hargrove did not challenge the district court's use of that standard — to the contrary, he expressly accepted it below and has also advanced it in making his arguments to us. Applying that standard, the district court found that Hargrove had satisfactorily demonstrated "a particularized risk of contracting the disease at his prison facility," but that he had not shown "a particularized susceptibility to the virus."

In reaching that conclusion, the court relied on the same CDC data advanced by Hargrove to conclude that his asthma and high blood pressure "*might* place him at greater risk of serious illness or death from COVID-19." And it concluded that because Hargrove had established only that his risk "*might* [be] increase[d]," he had "not establish[ed] an extraordinary and compelling reason for immediate release." As to sleep apnea, the court observed, as did Hargrove, that the CDC had not recognized the condition as a COVID-19 risk factor.

Thus, while the district court relied on the CDC data, just as Hargrove did, as evidence on the issue before it, it did not adopt a bright-line rule *limiting its consideration* to medical conditions that the CDC had included in its highest risk category. Rather, it found that, as to asthma and hypertension, the CDC's current findings were that those conditions *might* increase a person's risk, and as to sleep apnea, it noted that the CDC had not recognized the condition as one increasing COVID-19 risk, all of which Hargrove had

12

also recognized.  While the court did not indicate that it had considered the preliminary studies on sleep apnea referenced by Hargrove, that failure was of no moment because, according to Hargrove's proffer, those studies similarly concluded only that sleep apnea "'*may* be a risk factor.'"  (Emphasis added).  At bottom, the court concluded that "conditions that *might* increase . . . risk" are insufficient to establish an extraordinary and compelling reason for release from prison.

Addressing that holding, Hargrove notes that it is inconsistent with holdings of "[o]ther district courts" that have accepted that medical conditions that "'might' increase the risk of severe complications from COVID-19" support a finding of extraordinary and compelling reasons for granting compassionate release.  *See, e.g.*, *United States v. Gil*, 484 F. Supp. 3d 19, 22–23 (D.N.H. 2020) (recognizing asthma as sufficient).  But a canvass of district court opinions on the issue will not resolve, as a general proposition, whether medical conditions that only *might* increase risk with respect to COVID-19 should ordinarily lead to the grant or denial of motions for compassionate release.  Nonetheless, in this case, we conclude that the district court did not abuse its discretion in concluding that Hargrove's medical evidence failed to establish his particular circumstances as extraordinary and compelling.  *See United States v. Harris*, 989 F.3d 908, 912 (11th Cir. 2021) (concluding "readily" that the district court had not abused its discretion in concluding that an inmate had not established "extraordinary and compelling reasons" where the inmate had identified several medical conditions but only one of them was listed by the CDC as a condition that "might" increase risk); *see also United States v. Thompson*, 984 F.3d 431, 434–35 (5th Cir. 2021) (agreeing with the district court that it was

13

"uncertain" whether "an otherwise healthy defendant with two, well-controlled, chronic medical conditions" was "at a significantly higher risk than is the general inmate population").

The factors applicable to the determination of what circumstances can constitute an extraordinary and compelling reason for release from prison are complex and not easily summarized. When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances — when sufficiently extraordinary and compelling — than to society's interests in the defendant's continued incarceration and the finality of judgments. Thus, motions for relief under § 3582(c)(1)(A)(i) ask courts to balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other.

As directed by § 3582(c)(1)(A) and 28 U.S.C. § 994(t), the Sentencing Commission undertook to set forth what constitutes an extraordinary and compelling reason for compassionate release when the motion is filed by the BOP on the inmate's behalf. *See* U.S.S.G. § 1B1.13. Section 1B1.13's commentary provides that when the defendant's medical condition is relied on, "extraordinary and compelling reasons exist" when (1) "[t]he defendant is suffering from a terminal illness" or (2) "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1. But

14

that section only applies to motions filed under § 3582(c)(1)(A)(i) when the motion is filed by the BOP. And, as we have observed, there is no applicable Guidelines provision that governs when a *defendant* files the motion for compassionate release, as newly authorized by the First Step Act of 2018. *See McCoy*, 981 F.3d at 281. Nonetheless, we have observed that because U.S.S.G. § 1B1.13 addresses what is, in the medical context, an "extraordinary and compelling reason" for release, it "remains helpful guidance even when motions are filed by defendants." *High*, 997 F.3d at 186 (quoting *McCoy*, 981 F.3d at 282 n.7).

It is also informative to recognize that, similar to the Sentencing Guidelines, the BOP's internal guidance for considering a request for compassionate release based on medical conditions contemplates release being given only to inmates who have a "terminal medical condition" or a "debilitat[ive] medical condition." *See* U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*, 4–5 (Jan. 17, 2019) (cleaned up). And those conditions must also be considered in the context of other specified factors, such as, among others, the "[n]ature and circumstances of the inmate's offense" and his "[c]riminal history"; "[c]omments from victims"; the inmate's "[p]ersonal history"; "[i]nstitutional adjustment" and "[d]isciplinary infractions"; the inmate's age; and his "release plans." *Id*. at 12.

Thus, when the Sentencing Commission and the BOP have considered what amounts to "extraordinary and compelling reasons," they have pointed to an array of factors — not just to the single question of whether a medical condition or a group of medical conditions "*might* increase [an inmate's] risk" of severe consequences. While we

15

do not hold that only the Sentencing Guidelines commentary and BOP guidance can constitute the appropriate standard, we do conclude that the inquiry is multifaceted and must take into account the totality of the relevant circumstances.

Thus, Hargrove's argument focusing on the appropriateness of the district court's conclusion — that medical conditions that *might* increase the risk of serious illness or death are insufficient — is not without merit, as a district court's so holding might fail to account for the complexities that may be presented in certain cases. But in the circumstances presented by *this* case, we conclude that the district court did not abuse its discretion.

B

Hargrove also contends that the district court erred in considering all of the § 3553(a) factors because his sentence included, as a component part, a *revocation* sentence. Hargrove recognizes that the compassionate-release statute requires district courts to consider the § 3553(a) factors, but he also points out that the statute provides that those factors need to be considered only "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Applying that limitation, he argues that the factors in § 3553(a)(2)(A) were *not applicable*. While that provision directs courts, when imposing a sentence, to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," another statute limits consideration of those factors when imposing a *revocation* sentence. *See* 18 U.S.C. § 3583(e)(3); *see also United States v. Crudup*, 461 F.3d 433, 439 (4th Cir. 2006) (recognizing that, under § 3583(e), "the district court is not authorized to consider whether

16

the revocation sentence 'reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense'"). Thus, he argues that "[s]ince a district court cannot consider the retributive factors *in imposing* or deciding the length of a revocation sentence, it stands to reason that it should not consider those retributive factors in deciding whether *to reduce* such a sentence." (Emphasis added).

First, we note that Hargrove never presented this argument to the district court. Indeed, to the contrary, he affirmatively argued that the court was "require[d], of course, . . . [to] consider the § 3553(a) factors in determining whether to reduce [his] sentence" without suggesting that this consideration should vary based on the portion of his sentence being considered. Moreover, in his discussion of the § 3553(a) factors, he acknowledged "the seriousness of his offense," making an express reference to one of the factors contained in the very provision that he now contends the district court was prohibited from considering, at least with respect to his revocation sentence. Thus, there is much substance to the government's argument that "Hargrove invited this alleged error by repeatedly referencing the § 3553(a) factors *as a whole* in his compassionate release motion."

Regardless of whether the alleged error was invited, however, we conclude that the district court did not err in considering the § 3553(a) factors. The court addressed the § 3553(a) factors, which, as Hargrove recognizes, it was required to do in deciding a compassionate-release motion, and concluded that granting Hargrove's motion and authorizing his release would not, as § 3553(a)(2) requires, "'reflect the seriousness of the offense,' 'promote respect for the law,' 'afford adequate deterrence,' and 'protect the public.'" The court explained that Hargrove had twice been convicted of drug trafficking

17

and that the second offense was committed while he was still on supervised release for the first. It said, "Hargrove's return to the same behavior after his first prison stint [of 10 years] demonstrated his lack of respect for the law and showed that his first prison sentence did not deter him from continuing to commit drug crimes. The sentences originally imposed provide just punishment for Hargrove's offenses."

In arguing that these considerations were improper, Hargrove reasons that because part of his sentence was a revocation sentence, the court should not have considered the factors of § 3553(a)(2)(A), which are prohibited when imposing a revocation sentence. But the court was not *imposing* a sentence; it was being asked to *reduce* a sentence that was already legally imposed. It follows, therefore, that Congress could specify distinct factors in performing the two distinct functions, as is, indeed, reflected in the specific criteria set forth in § 3582(c)(1)(A) for reducing a sentence. *See Dillon v. United States*, 560 U.S. 817, 825–26 (2010) (recognizing the difference between imposing a sentence, on the one hand, and reducing a sentence under 18 U.S.C. § 3582(c)(2), on the other, despite the fact that both require consideration of the § 3553(a) factors).

Moreover, even were Hargrove's theory accepted, the court would still have had to consider the § 3553(a)(2)(A) factors in deciding whether to reduce his 46-month sentence for drug trafficking, which he was still serving. Indeed, when he filed his motion he had only served 31 months of that sentence.

Accordingly, we reject Hargrove's challenge to the district court's consideration of the § 3553(a) factors.

C

Finally, Hargrove contends that the district court erred in "not address[ing] [his] extensive rehabilitation efforts or explain[ing] why it gave them no weight under the § 3553(a) factors." Yet, the record belies his argument.

When applying the § 3553(a) factors, the district court explicitly balanced numerous considerations. The court noted that Hargrove committed his second offense while he was still on supervised release from his first; that those two convictions were for "the same behavior" — drug trafficking; that his return to the same behavior after serving time for his first conviction "demonstrated his lack of respect for the law and showed that his first prison sentence did not deter him from continuing to commit drug crimes"; and that the sentences that the court had imposed— the 46-month sentence for his conviction and the 57-month sentence for his supervised release violation — "provide[d] just punishment for Hargrove's offenses." The court also acknowledged Hargrove's "self-improvement during his incarceration" and commended him for it, revealing that the court had considered that fact. But after considering all of the factors stated, the court explained that, in its view, the factors giving rise to Hargrove's original 103-month sentence "remain."

We conclude that the court's explanation in this regard amply enables us to conduct an appellate review. As we have noted, "the touchstone" in assessing the sufficiency of the district court's explanation "must be whether the district court 'set forth enough to satisfy our court that it has *considered* the parties' arguments and has *a reasoned basis* for exercising its own legal decisionmaking authority,' so as to 'allow for meaningful appellate review.'" *High*, 997 F.3d at 190 (cleaned up) (quoting *Chavez-Meza v. United States*, 138

19

S. Ct. 1959, 1965 (2018)); *see also United States v. Jenkins*, 22 F.4th 162, 171 (4th Cir. 2021).

Applying that standard here, it is significant that the district judge who considered Hargrove's motion for compassionate release was the same judge who had sentenced him in May 2018. *See Chavez-Meza*, 138 S. Ct. at 1967 ("We . . . need not turn a blind eye to what the judge said at petitioner's initial sentencing"). And at that May 2018 sentencing hearing, the court repeatedly acknowledged Hargrove's family support and the positive developments in his life. It stated, among other things, that "[i]t [was] a really tough situation because everybody in this room, all of us, know about the good things that he has done," and it remarked how, "much to his credit, he ha[d] been steadily employed . . . and mak[ing] a nice living for himself and his family." Nonetheless, the court imposed sentences at the top of the Sentencing Guidelines ranges, noting that despite the good aspects of his character, Hargrove had returned to distributing drugs while on supervised release.

Thus, when the same judge was confronted with Hargrove's motion for compassionate release in July 2020, it knew of Hargrove's circumstances, both favorable and unfavorable, and it referenced them in its balancing of the § 3553(a) factors. It noted that Hargrove had "return[ed] to the same [criminal] behavior after his first prison stint," thus "show[ing] that his first prison sentence" of 120 months' imprisonment had "not deter[red] him from continuing to commit drug crimes." The court also referenced Hargrove's evidence that, in the approximately two-and-a-half years since his sentences were imposed, he had not received any disciplinary infractions and had completed

20

numerous classes by "commend[ing] Hargrove for his self-improvement during his incarceration." But the court made clear that, in its assessment of the § 3553(a) factors, Hargrove's post-sentencing rehabilitation efforts did not outweigh "the considerations that led the Court to sentence Hargrove to a total of 103 months in prison" in the first place.

In these circumstances, we conclude that the district court provided a sufficient explanation to allow for meaningful appellate review.

\* \* \*

For the reasons given, we do not find that the district court abused its discretion, and we therefore affirm the district court's order denying Hargrove's motion for compassionate release.

AFFIRMED