**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-6602

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RAYCO BETHEA,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Joseph F. Anderson, Jr., Senior District Judge.  (3:14-cr-00430-JFA-11)

Argued:  October 26, 2022                          Decided:  December 13, 2022

Before AGEE and WYNN, Circuit Judges, and MOTZ, Senior Circuit Judge.

Affirmed by published opinion.  Judge Agee wrote the opinion in which Judge Wynn and Senior Judge Motz joined.

**ARGUED:**    Sean McClelland, MCGUIREWOODS LLP, Washington, D.C., for Appellant.  Andrew Robert de Holl, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.  **ON BRIEF:**  Nicholas J. Giles, Richmond, Virginia, Jessica L. O'Brien, MCGUIREWOODS LLP, Charlotte, North Carolina, for Appellant.   Adair F. Boroughs, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

AGEE, Circuit Judge:

At the same time that federal prisoner Rayco Bethea was resentenced to a 188-month term of imprisonment, the district court denied his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) (authorizing district courts to "reduce the term of imprisonment" on finding "extraordinary and compelling reasons" to do so). In his § 3582(c) motion, Bethea argued that he has significant health issues that place him at an elevated risk of serious illness were he to contract COVID-19 and that the relevant § 3553(a) factors warrant his immediate release.

The Government opposed Bethea's motion, citing a number of measures that the Federal Bureau of Prisons ("BOP") has taken to protect inmates, like Bethea, from COVID-19. Further, it argued that the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against reducing Bethea's term of imprisonment.

On appeal, Bethea contends the district court abused its discretion by essentially applying a per se rule that individuals vaccinated against COVID-19 were ineligible for § 3582(c) release. In addition, he argues the district court improperly based its § 3553(a) analysis on one factor to the exclusion of others. Because both arguments misrepresent the record and are without merit, we affirm the judgment of the district court.

I.

A.

Rayco Bethea has a significant criminal history pre-dating the conviction for which he is currently imprisoned. He was sentenced to six months' imprisonment for possession of crack cocaine in 1999. The next year he was convicted of possession with intent to distribute cocaine and possession of crack cocaine, for which he received a fifteen-year prison sentence, suspended upon three years of probation.

The events leading to Bethea's current conviction and imprisonment came to light in 2011, when wiretap evidence revealed Bethea's involvement in a drug trafficking organization. Bethea was purchasing cocaine, converting most of it to crack, and then supplying it to the organization. As a result, he was charged with one count of conspiring to distribute cocaine, in violation of 21 U.S.C. § 846, and three counts of using a telephone to facilitate that conspiracy, in violation of 21 U.S.C. § 843(b). Because of Bethea's three state drug convictions from 1999 and 2000, the Government filed an information under 21 U.S.C. § 851(a) seeking enhanced penalties, meaning that, under the law then in effect, Bethea would face a mandatory life sentence for the § 846 charge. *See* 21 U.S.C. § 841(b)(1)(A) (2015).

Thereafter, Bethea and the Government entered into a plea agreement, under which Bethea would plead guilty to the § 846 charge and, in exchange, the Government would move for a downward departure and withdraw the factual basis supporting the sentencing enhancements that would have resulted in life imprisonment.

3

Bethea pleaded guilty in March 2015. He was allowed to remain on home confinement while awaiting sentencing because there was a possibility that he could receive a kidney transplant during the intervening period.[1]

At Bethea's sentencing hearing, the Government objected to being held to the terms of the plea agreement based on newly discovered information. The Government had learned—and Bethea admitted—that during his home confinement awaiting sentencing, he had resumed cooking crack cocaine. Specifically, Bethea admitted to cooking crack three times a week in the home he shared with his wife and eight children and to distributing up to one ounce of crack each time. Because this conduct violated the plea agreement, the Government declined to move for a downward departure or to withdraw the request for enhanced penalties based on Bethea's prior convictions. Accordingly, the district court imposed the statutorily mandated life sentence.

In 2016, while incarcerated in Missouri, Bethea filed a 28 U.S.C. § 2255 motion alleging several ineffective assistance claims, including counsel's failure to file a direct appeal. The United States Marshal determined that Bethea's health condition necessitated he be transported to the District of South Carolina for the hearing by private plane. Because

---

[1] At the time of his most recent arrest, Bethea had been receiving Social Security disability payments for three years for several medical conditions, including kidney disease and lupus.

Both conditions persist in some form today. Bethea's prison medical records indicate that he also has hypertension and breathing issues caused by sleep apnea. The medical conditions are being managed in prison and are either in remission or have been resolved such that he can complete his daily living skills unassisted. He receives regular medical treatment, including medication and thrice-weekly dialysis.

Of further relevance to this appeal, while Bethea was imprisoned, but before his § 3582(c) hearing, he received two doses of a COVID-19 vaccine.

that trip would cost the taxpayers $30,000, the court asked Bethea to consent to a hearing via video teleconference. He refused. In 2019, the court determined that the "most feasible" and "fairest" course of action was to vacate and re-enter Bethea's sentence so as to permit him to file a timely direct appeal.

In that direct appeal, this Court vacated Bethea's reimposed life sentence and remanded for resentencing after holding that his life sentence was unlawful under the First Step Act of 2018 ("FSA"). *United States v. Bethea*, 841 F. App'x 544 (4th Cir. 2021). Namely, we determined that the vacatur and reentry of judgment nullified Bethea's original sentence such that, as a matter of law, he was not sentenced until 2019—after the FSA's enactment. *Id.* at 550. Thus, Bethea's sentence had to comply with the FSA, which no longer authorized the life sentence he'd received. *Id*. at 556.

A revised Presentence Report ("PSR") set Bethea's new Sentencing Guidelines range at 151 to 188 months' imprisonment. At a hearing in March 2021, the district court sentenced him to 188 months' imprisonment. That decision is not before the Court. At the same hearing, however, the district court considered and denied Bethea's accompanying motion for compassionate release.

B.

While Bethea's direct appeal from his original life sentence was pending, he moved for compassionate release in the district court. He cited two reasons in support of his release: (1) his medical conditions could lead to a severe case of COVID-19 if he contracted the virus, and (2) the FSA rendered his life sentence unfair. Because the compassionate release motion remained pending as this Court remanded for resentencing, the district court

5

considered it immediately following Bethea's resentencing. And because this Court's remand for resentencing under the FSA mooted that part of Bethea's argument for compassionate release, the part of the hearing related to his § 3582 motion focused on his alleged COVID-19 vulnerability.

In support of his motion, Bethea cited Centers for Disease Control and Prevention ("CDC") guidance indicating that chronic kidney disease increases the risk of contracting a serious case of COVID-19. Bethea further claimed that COVID-19 posed unique risks to prison inmates given they are confined in a congregate setting. Specifically, he highlighted inmates' inability to practice social distancing.

The Government opposed Bethea's release. It noted that the BOP had instituted measures to provide for the safety of inmates during the pandemic. Further, the Government cited Bethea's pretrial-release conduct—cooking crack cocaine in violation of the plea agreement that would have spared him the originally imposed life sentence. That behavior, the Government argued, weighed heavily against granting Bethea's motion.

The district court acknowledged that Bethea faced significant health challenges, but observed that he had received two doses of a COVID-19 vaccine, which it noted—without contradiction—was being touted by the CDC as being very successful. In addition, the court recounted § 3553(a) factors counseling against release, in particular Bethea's pretrial-release violation. Consequently, the court denied relief, concluding both that Bethea had failed to show that his condition constituted extraordinary and compelling grounds for relief and that the § 3553(a) factors did not warrant release.

Following the district court's denial of his motion, Bethea timely filed this appeal. We have jurisdiction under 28 U.S.C. § 1291.

## II.

We review the district court's decision to deny Bethea's motion for compassionate release for abuse of discretion. *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021). Under this standard, "this Court may not substitute its judgment for that of the district court." *United States v. Vidacak*, 553 F.3d 344, 348 (4th Cir. 2009). A district court abuses its discretion when it acts "arbitrarily or irrationally," fails to follow statutory requirements, fails to "consider judicially recognized factors constraining its exercise of discretion," relies "on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 185, 187 (quoting *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018)).

At the outset, we note that the default position stated in § 3582(c) is that a sentencing court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Congress has provided few exceptions to this general rule, but one such exception is the basis upon which Bethea relies: "extraordinary and compelling reasons warrant[ing]" a reduction or immediate release. *Id.* § 3582(c)(1)(A)(i).

Prior to the FSA, only the BOP Director could request that a district court reduce a term of imprisonment on this ground. *Id.* § 3582(c)(1)(A) (2002). But Congress amended the law to now permit federal inmates to file motions for compassionate release directly once they have exhausted their administrative remedies. *See* Pub. L. No. 115–391, § 603(b), 132 Stat. 5194, 5239 (2018).

To grant such a compassionate release motion, the district court must conclude that the movant satisfies two separate criteria. *United States v. Hargrove*, 30 F.4th 189, 194–95. First, the court must determine the prisoner is eligible for a sentence reduction because he has shown "extraordinary and compelling reasons" supporting relief. *Id.* at 194–95. If the district court finds "extraordinary and compelling reasons," it must then find that release is appropriate under the 18 U.S.C. § 3553(a) sentencing factors, to the extent those factors are applicable. *Id.* at 195. Thus, even if a movant satisfies the threshold eligibility requirement for obtaining relief, a district court has discretion to grant or deny relief based on its assessment of the salient § 3553(a) factors.

A.

1.

Section 3582(c)(1)(A)(i) does not prescribe a precise standard for making eligibility determinations. *Id.* at 197. This Court has held that the "factors applicable to the determination of what circumstances can constitute an extraordinary and compelling reason for release from prison are complex and not easily summarized." *Id.* The inquiry is "multifaceted" and must account for "the totality of the relevant circumstances." *Id.* at 198. At bottom, the court's task is to balance "the severity of the inmate's personal circumstances" with the "need[] for incarceration." *Id.* at 197.

When an inmate's medical condition is the basis for the motion, courts have consulted a variety of sources in determining eligibility. *Id.* at 197. For example, this Court has favorably cited U.S.S.G. § 1B1.13 and BOP internal guidance. *Id.* When specifically considering COVID-19-related compassionate release motions, this Court has instructed

8

district courts not to focus on the "rarity" of the inmate's underlying medical condition. *United States v. Petway*, No. 21-6488, 2022 WL 168577, at *3 (4th Cir.). Instead, the inquiry should consider whether the underlying condition places the inmate at an increased risk of severe illness from COVID-19. *Id.*

No one source represents a dispositive standard for making an eligibility determination. *See Hargrove*, 30 F.4th at 198 ("[W]e do not hold that only the Sentencing Guidelines commentary and BOP guidance can constitute the appropriate standard."); *see also Petway*, 2022 WL 168577, at *3 ("On remand, the district court can consult relevant CDC guidelines and other evidence in assessing Petway's motion for compassionate release."). The district court ultimately retains discretion to choose the guidance it finds most pertinent in balancing the inmate's circumstances with the need for incarceration. *See Hargrove*, 30 F.4th at 198 (concluding that these sources "can constitute the appropriate standard," but "conclud[ing] that the inquiry is multifaceted and must take into account the totality of the relevant circumstances").

## 2.

In this case, Bethea first argues that the district court abused its discretion by concluding that he did not present "extraordinary and compelling reasons" for release. Bethea points to having five factors (a combination of health, race, and confinement risk factors) that the CDC has recognized increase a person's risk of getting extremely sick from COVID-19. He argues that the district court ignored these particulars of his medical conditions and disqualified him from release solely because he had received the COVID-19 vaccination.

9

Bethea's argument that the district court relied exclusively on his vaccination status in making its eligibility determination has no support in the record. On the contrary, the record shows that the Government did not advance, nor did the district court apply, a per se vaccination rule. In opposing Bethea's motion, the Government cited his vaccination status, but also referenced other reasons favoring continued incarceration. *See* J.A. 289–90 (arguing that BOP COVID-19 procedures, questions about Bethea's release plan, and Bethea's past abuse of home confinement counseled against Bethea's release).

Following suit, it's clear from the hearing transcript that Bethea's vaccination status was far from the only factor that the district court considered. To be sure, the court noted Bethea's receipt of COVID-19 vaccinations as *a* relevant factor. J.A. 291–92 ("He's now received both vaccines which are supposed to be at least 90 percent effective for preventing the disease. . . . He's gotten both vaccinations."). But that's the sum total of the court's comments about vaccination during its bench ruling. No fair reading of the record supports Bethea's argument that the district court viewed vaccinations as a per se bar to § 3582(c)(1)(A) relief.

Alongside what the court actually said about Bethea's vaccination status are the other comments related to Bethea's medical condition that plainly factored into its assessment of his eligibility for relief. For example, the court noted other "corrective measures that the [BOP] has taken to provide for safety and security there during the pandemic," including measures it had taken to protect Bethea in the past when he'd been exposed to someone with COVID-19. J.A. 291. And the court acknowledged Bethea's medical conditions and thrice-weekly dialysis. J.A. 292.

10

Lastly, we observe that when given the opportunity to respond, Bethea did not voice any concern that the district court was applying a per se rule that vaccination precluded a finding of extraordinary and compelling circumstances warranting relief. J.A. 292. Instead, Bethea raised this per se argument for the first time on appeal.

Thus, Bethea's argument that the court applied a per se vaccination rule is without merit, and we need not consider whether such a rule would be problematic when assessing another movant's extraordinary and compelling reasons for relief.

Nor must we determine whether the court erred in finding that Bethea failed to make this requisite threshold showing of extraordinary and compelling reasons. While such a finding is the portal a movant must enter to establish eligibility for release, we can assume, without deciding, that Bethea has done so. As noted earlier, a district court that finds a defendant presents extraordinary and compelling reasons for release is not required to grant a sentence reduction. *High*, 997 F.3d at 186. Instead, this Court can affirm a district court's compassionate release decision regardless of a flaw in the eligibility analysis if its subsequent § 3553(a) assessment was sound. *See id*. at 187*; see also United States v. Kibble,* 992 F.3d 326, 330–32 (4th Cir. 2021) (per curiam).[2]

---

[2] We do note that Bethea raises several arguments related to the efficacy of the COVID-19 vaccine, particularly with respect to high-risk population groups. Bethea did not develop a vaccine-efficacy argument in support of his motion in the district court. And some of his arguments could not have been made then because they rely on data generated after the § 3582(c) hearing. We do not and need not consider these arguments on appeal. In deciding a motion for compassionate release, the district court is confined to the evidence presented. *See United States v. Osman*, No. 21-7150, 2022 WL 485183, at *1 (4th Cir. Feb. 17, 2022) ("We are satisfied that the district court did not abuse its discretion by failing to consider a claim that [the movant] never presented to it."). Further, the record (Continued)

B.

1.

If the "extraordinary and compelling" threshold showing has been made, the district court must then evaluate the relevant § 3553(a) factors. *Hargrove*, 30 F.4th at 195. Those factors include, among others, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with . . . medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a).

District courts "enjoy[] broad discretion" in analyzing the § 3553(a) factors when deciding a § 3582(c)(1)(A) motion. *Kibble*, 922 F.3d at 330. However, this Court's precedent provides guideposts for determining if a court has abused its discretion in its consideration of the § 3553(a) factors. *See High*, 997 F.3d at 189; *Kibble*, 992 F.3d at 332. Namely, a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors when explaining its compassionate release ruling. *See High*, 997

---

before the district court is all that we can consider on appeal. *See Petway*, 2022 WL 168577, at *2 ("[W]e must assess the Denial Order based on the record before the district court."); *see also United States v. Jones*, No. 22-6071, 2022 WL 2303960, at *2 n.* (4th Cir. June 27, 2022) ("[W]e review the district court's exercise of its discretion based upon what it had before it when it made its decision.").

To the extent Bethea believes this post-hearing data presents new information that a district court may find relevant, we note that § 3582(c) does not prevent prisoners from filing successive motions.

12

F.3d at 189; *Kibble*, 992 F.3d at 332. Additionally, the district court is less likely to have abused its discretion if it considered arguments in opposition to its ultimate decision. *See High*, 997 F.3d at 189; *Kibble*, 992 F.3d at 332. Further, it weighs against an abuse of discretion—and is viewed as "significant"—when the same judge who sentenced the defendant rules on the compassionate release motion. *Hargrove*, 30 F.4th at 200 ("[I]t is significant that the district judge who considered Hargrove's motion for compassionate release was the same judge who had sentenced him in May 2018."); *High*, 997 F.3d at 189. Moreover, the less time there is between the court's sentencing-phase § 3553(a) analysis and its compassionate-release assessment, the more consequential this latter consideration becomes. *See High*, 997 F.3d at 184, 189; *Kibble*, 992 F.3d at 331–32.

## 2.

At the outset, the fact that Bethea's resentencing and compassionate release motion were decided by the *same judge* during the *same hearing* weighs against his criticism of the sufficiency of the court's discussion. As just explained, this Court has said it's relevant to this inquiry whether the same district judge who sentenced the defendant also considered the § 3582(c) motion. *High*, 997 F.3d at 189. When the same sentencing judge assesses the § 3553(a) factors again for compassionate release purposes, there's a strong indication that the judge knows of the defendant's circumstances, both favorable and unfavorable, and considers the totality of the record when assessing whether a different sentence is now warranted. *Hargrove*, 30 F.4th at 200.

This Court's recent opinions in *High* and *Kibble* highlight this principle. In both cases, this Court held that the district court did not abuse its discretion in denying a

13

COVID-19-related motion for compassionate release. *High*, 997 F.3d at 187; *Kibble*, 992 F.3d at 332. In *High*, the district court principally relied on its sentencing-phase consideration of the § 3553(a) factors in denying the defendant's compassionate release motion. 997 F.3d at 184 ("Defendant was very recently sentenced, and he committed the offense in this action soon after completing twenty years in state custody for a violent crime. In light of this, the Court's assessment of the relevant sentencing factors has not changed."). Despite the sentencing taking place *sixteen months* before hearing the defendant's motion for compassionate release, this Court concluded the § 3553(a) analysis was sufficiently close in time to the motion to take that into account in assessing the court's discussion of those factors. *Id.* at 183, 189.

Similarly, in *Kibble*, the district court's denial of compassionate release was largely based on its § 3553(a) analysis from the defendant's original sentencing. 992 F.3d at 331. On appeal, this Court determined that the district court did not err by relying on its evaluation—from six months prior—of the § 3553(a) factors. *Id.* at 332 (noting that the district court's analysis amounted to a reconsideration of the § 3553(a) factors); *see also United States v. Kibble*, No. 2:19-CR-00077, 2020 WL 3470508 (S.D.W. Va. June 25, 2020) (noting that Kibble's sentencing took place on January 14, 2020).

This principle operates with even greater force here, where it was not just the same district court judge sentencing the movant at some point in the past and later considering the § 3582(c) motion, but the same district court judge doing so *in the same hearing seriatim*. Here, the district court conducted a thorough analysis of the § 3553(a) factors at

14

Bethea's resentencing just moments prior to considering those same factors as part of Bethea's § 3582(c) motion.

At the resentencing, the district court considered: (1) the "nature and circumstances of the offense," *see* J.A. 277 ("[Bethea] was ultimately held responsible for 16 kilograms of cocaine and one-half of a kilogram of crack cocaine. Both of those are serious offenses in this Court's opinion."); (2) the "history and characteristics of the defendant," *see* J.A. 278 (addressing Bethea's significant criminal history and noting that despite numerous prior convictions he has "spent very little time" incarcerated); and (3) the "history and characteristics of the defendant," *see* J.A. 278–79 (considering Bethea's health conditions and the medical treatment he receives in prison); *see also* J.A. 280 (commending Bethea for participating in educational programs and noting that Bethea's disciplinary record was limited to two minor infractions). The district court also explicitly addressed the need for Bethea's sentence to achieve the goals outlined in § 3553(a) in view of his medical conditions and rehabilitation efforts while in prison. *See* J.A. 279 (discussing the manner in which Bethea was receiving medical care while in prison); J.A. 280 ("I've also considered . . . the need for the sentence imposed to reflect the seriousness of the offense. As I said, this is a serious offense[;] . . . while the defendant was given the luxury of being out on bond for these pending charges for which he faced a potential life sentence, he used that opportunity to continue to cook crack cocaine . . . ."); J.A. 281 ("I've also considered the need for the sentence imposed to promote respect for the law. Once again, his behavior while on pretrial release . . . does not demonstrate respect for the law."); *id*. ("I am also required to consider the need for imposing just punishment and adequate deterrence and

15

the need to protect the public from future crimes of the defendant. I've carefully considered all those factors."); *id*. ("I've also considered the need to avoid unwarranted disparity in the sentences of similarly situated co-defendants. . . . Particularly his behavior while on release pending trial sets him apart from similarly situated co-defendants in terms of his disregard for the law while these charges were pending.").

Mere moments after undertaking that § 3553(a) analysis, the district court moved into its consideration of Bethea's compassionate release motion. *See* J.A. 281–82. Simply put, if a hearing months later does not require a district judge to retread earlier § 3553(a) analysis, a hearing minutes later certainly does not require it to start anew. *See High*, 997 F.3d at 189; *Kibble*, 992 F.3d at 333. That the same judge made both of these determinations within minutes of each other in the same hearing is significant evidence that the district court acted within its discretion.

This conclusion makes eminent sense given that the record demonstrates that the entire § 3582(c) hearing was conducted in view of the resentencing that had just occurred. Thus, not just the district court, but also Bethea's attorney, made explicit reference to and incorporated statements made during the resentencing portion of the hearing. *See* J.A. 283 (Bethea's attorney: "Again, the medical condition is pretty well-established in the record. I am not [going] to go through that again. Your Honor seems to have a good grasp of that."); *see also* J.A. 286 (Judge Anderson: "Let's talk about the medical conditions. I don't want to sound punitive[] here, but as I point[ed] out earlier, he qualified for complete social security disability back in 2011. And then he committed these crimes after that. And he committed these crimes with his kidney problems, with his dialysis treatments."). The

16

district court's deliberate incorporation of its resentencing phase § 3553(a) analysis into its compassionate release § 3553(a) analysis weighs against any finding of an abuse of discretion.

3.

That said, contrary to Bethea's assertion, the district court did not limit its § 3582(c) assessment of the § 3553(a) factors to a single factor. Bethea argues that in essence, the court's preoccupation with his pretrial-release violation amounts to evaluating only one relevant factor. We disagree.

Our review of the transcript shows that the district court addressed more than one § 3553(a) factor in considering this aspect of Bethea's motion and, in fact, added to its original, resentencing-phase assessment of those factors. That showing weighs against finding an abuse of discretion. *See High*, 997 F.3d at 189; *Kibble*, 992 F.3d at 332.

Specifically, the district court's explanation for why it was rejecting the motion explicitly addressed Bethea's health conditions and access to medical care. *Compare* J.A. 292 ("So I acknowledge he has lupus and needs a kidney. He gets dialysis treatment three times a week at the Bureau of Prisons. Hopefully, the COVID-19 pandemic will begin to subside. He's gotten both vaccinations."), *with* 18 U.S.C. § 3553(a)(2)(D) ("to provide the defendant with needed . . . medical care"). The district court also reiterated that the sentence was necessary to deter further criminal conduct and to protect the public. *Compare* J.A. 292 ("I think there's a severe possibility that he could revert to his old ways of criminal misbehavior, serious criminal misbehavior in terms of drug distribution."), *with* 18 U.S.C. § 3553(a)(2)(B)–(C) ("to afford adequate deterrence to criminal conduct" and

17

"to protect the public from further crimes of the defendant"). And the court appropriately noted the nature of Bethea's offense and acknowledged that it "[could] []not get away from the fact that . . . while on pretrial release pending trial in this case, he used the opportunity to go back to cooking crack cocaine in his home." J.A. 291–92; *see* 18 U.S.C. § 3553(a)(2)(A) ("to promote respect for the law"). And, of course, these specific references came after the more robust discussion of the factors that had just occurred earlier in the hearing.

In sum, a complete review of the record demonstrates that when deciding the compassionate release motion, the district court considered multiple § 3553(a) factors, not just one.

4.

We further reject Bethea's assertion that the district court failed to adequately consider his arguments in favor of release. To some degree, he simply disagrees with the court's conclusion that the § 3553(a) factors did not warrant release. But to the extent Bethea separately takes issue with the adequacy of the court's discussion, we reject it.

How in depth a court must consider the parties' arguments varies based on the relative simplicity of the case: "[T]here are cases in which a 'minimal' explanation suffices, while in 'other cases, more explanation may be necessary.'" *High*, 997 F.3d at 189 (quoting *Chavez-Meza*, 138 S. Ct. at 1965, 1968). In *High*, the defendant argued for compassionate release solely relying on "his particular vulnerability to COVID-19," but the district court denied the motion solely relying on the § 3553(a) factors. *Id.* at 190–91. This Court held that the district court sufficiently considered the defendant's COVID-19-based arguments

18

because it "implicitly responded" to them. *Id.* at 189. That the district court did not "acknowledge[] and address" the defendant's arguments did not amount to abuse of discretion given the "relative simplicity" of the case. *Id.* at 190–91.

Like the motion in *High*, Bethea's compassionate release motion was based on his COVID-19 vulnerability. J.A. 282–83. But the district court's consideration of Bethea's relevant medical conditions and COVID-19-based arguments was far more extensive than the implied consideration that sufficed in *High*. J.A. 291–92. The district court unambiguously addressed Bethea's concerns, stating, "I'm aware of the terrible problems in the prisons occasioned by the COVID-19 pandemic." J.A. 291. Additionally, the district court explicitly considered Bethea's health conditions and acknowledged that those conditions placed him at higher risk of COVID-19-related complications. J.A. 291–92. Further, the district court recognized the fact that Bethea needed a kidney transplant. J.A. 292. All told, the court sufficiently addressed Bethea's arguments given the totality of the hearing and the nature of those arguments.

5.

Bethea next challenges the district court's assessment of his rehabilitative efforts, arguing that the assessment was inadequate under the standard established in *United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019), and subsequently applied in *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). In Bethea's view, the district court's focus on his pretrial-release conduct demonstrates a failure to adequately account for his rehabilitative efforts. Again, we disagree.

19

The *Martin* Court held that the defendant was entitled to an "individualized explanation" regarding why her rehabilitative efforts were insufficient to warrant a sentence reduction. *Martin*, 916 F.3d at 397. In *McDonald*, this Court applied the *Martin* standard and noted that "while the district court is still empowered in its discretion to consider the facts of Appellants' original transgressions, the district court must also at least weigh Appellants' conduct in the years since their initial sentencings." 986 F.3d at 412.

Here, the district court met the standard established in *Martin* and applied in *McDonald*. The judge provided an "individualized explanation" that clearly articulated why Bethea's rehabilitative efforts did not outweigh his pretrial-release conduct. The district court commended Bethea for participating in educational programs while in prison. *See* J.A. 280 ("[Bethea has] taken some educational programs, including National Parenting Program I and II."); *see also id.* ("[H]e has taken a number of educational programs in an effort to get his GED, all of which is commendable."). It also acknowledged that Bethea's health conditions likely prevented him from being able to undertake vocational training. *See id.* ("He hasn't taken any real vocational training, primarily, I'm sure, because of his kidney problems."). Further, the district court acknowledged Bethea had limited disciplinary issues, having committed only two minor infractions. *Id.* ("[H]e only has two minor bumps on his record, one using another inmate's number to make a . . . phone call, and another for sending an unauthorized e-mail message, which are extremely lightweight, in my opinion.").

And the court explicitly compared and contrasted ways in which Bethea's circumstances differed from that of the defendants in the cases Bethea cited. J.A. 258–61.

20

In particular, the court noted that the defendants in *McDonald* had been incarcerated for nearly two decades, whereas Bethea had only been incarcerated for five years. *McDonald*, 986 F.3d at 412; J.A. 259–60. But the court acknowledged that, like the *McDonald* defendants, Bethea engaged in rehabilitative efforts and had maintained a "pretty good record" despite facing prison terms that gave them little incentive to do so. J.A. 258; *see also McDonald*, 986 F.3d at 411. Later, however, the court recognized that although Bethea would have had no reason to anticipate the changes in sentencing laws and circumstances that would allow him to be resentenced under them, there had "been a lot of activity, a lot of new law coming down on sentencing" in the past five years that gave "less force" to the idea that Bethea had no incentive to behave despite a life sentence. J.A. 259–60.[3]

Ultimately, the district court determined that Bethea's pretrial-release violation was too significant to warrant release. *See* J.A. 291–92 ("But I cannot get away from the fact that . . . while on pretrial release pending trial in this case, he used the opportunity to go back to cooking crack cocaine in his home."). This determination—that Bethea's transgression outweighed his subsequent rehabilitative conduct—is explicitly authorized by *McDonald*. *See* 986 F.3d at 412 ("While the district court is still empowered in its discretion to consider the facts of Appellants' original transgressions, the district court must also at least weigh Appellants' conduct in the years since their initial sentencings."). The

---

[3] Indeed, when Bethea was sentenced to life imprisonment in 2015, that sentencing judge had explicitly noted that despite the sentence "[t]here's a possibility, there's a lot of movement in Washington to do away with these mandatory sentences and if that ever happens you may benefit from it." J.A. 58.

district court weighed Bethea's rehabilitative conduct but decided it was not significant enough to outweigh the other factors.

The district court's § 3553(a) analysis clearly included a consideration of arguments that favored release. The judge considered Bethea's medical conditions and COVID-19-related concerns. He also thoroughly assessed Bethea's rehabilitative efforts. The district court's direct responses to arguments adverse to its decision bolsters the conclusion that there was no abuse of discretion.

* * * *

The record does not support Bethea's contention that the district court considered only one § 3553(a) factor. Rather, the district court considered numerous § 3553(a) factors, responding both to Bethea's arguments for release and the Government's arguments against release. Critically, Bethea's resentencing and his motion for compassionate release both took place in front of the same district judge on the same day during the same hearing. Nearly all the considerations that Bethea claims were absent from the court's compassionate-release analysis were comprehensively addressed immediately prior during the hearing's resentencing phase. In assessing the adequacy of its § 3553(a) assessment, it is appropriate to consider the totality of the district court's statements. We conclude that the district court's § 3553(a) analysis was sound and that the district court did not abuse its discretion in denying Bethea's motion for compassionate release.

Accordingly, we affirm the district court's judgment denying Bethea's § 3582(c) motion for compassionate release.

*AFFIRMED*

22