**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-7325**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ANTONIO DAVIS,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Robert G. Doumar, Senior District Judge.  (4:13-cr-00004-RGD-TEM-2)

Argued:  December 7, 2023                           Decided:  April 18, 2024

Before GREGORY, WYNN, and RUSHING, Circuit Judges.

Affirmed in part, vacated and remanded in part by published opinion.  Judge Gregory wrote the opinion, in which Judge Wynn joined.  Judge Rushing wrote a dissenting opinion.

**ARGUED:**  Rachel A. Chung, O'MELVENY & MYERS LLP, Washington, D.C., for Appellant.  Aidan Taft Grano-Mickelsen, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Michael R. Dreeben, O'MELVENY & MYERS LLP, Washington, D.C., for Appellant.  Jessica D. Aber, United States Attorney, Richmond, Virginia, Eric M. Hurt, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

GREGORY, Circuit Judge:

Antonio Davis is currently serving a 210-month prison sentence for conspiracy to possess with intent to distribute heroin. After serving about half of his sentence, and in the midst of the COVID-19 pandemic, Davis petitioned the district court for compassionate release based on his elevated risk of severe COVID-19 and a change in the law regarding his career offender status. The Court denied that relief. Davis now appeals. We conclude that the district court fairly assessed that Davis was not due compassionate release based on his susceptibility to COVID-19. But because the district court did not fully consider each of Davis's arguments, we vacate the district court's denial of compassionate relief and remand for further proceedings.

I.

In January 2013, Davis was indicted on charges of conspiracy to distribute and conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846(a)(1) and 841(b)(1)(A), and possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). In June of that year, he pled guilty, pursuant to a plea agreement, to conspiracy to possess with intent to distribute heroin. According to the Statement of Facts attached to the plea agreement, Davis was "responsible for more than 400 grams and less than 700 grams of heroin." J.A. 336. Davis received a career offender enhancement under § 4B1.1 because he'd previously been convicted of certain other offenses and because the offense at issue here was a "controlled substance offense" at the time of conviction. J.A. 329. The prior offenses included a 1990 attempted murder

2

conviction and a 2003 attempted robbery conviction.  After applying a three-level reduction for acceptance of responsibility, the court adopted an advisory guidelines range of 188 to 235 months imprisonment.  Ultimately, Davis was sentenced to 210 months imprisonment, with a four-year term of supervised release to follow.

In February 2021, Davis filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), which requires that any reduction in a sentence is warranted by an "extraordinary and compelling reason[]."  J.A. 186.  Davis presented two extraordinary and compelling reasons for compassionate release.  First, he argued that he was uniquely susceptible to the potential spread of COVID-19 due to his type-2 diabetes and hypertension.  Second, he argued that this Court's holding in *United States v. Norman*, which was decided after Davis was sentenced, that Virginia robbery did not constitute a violent felony under the Armed Career Criminal Act invalidated his career offender Guidelines designation.  *See* 935 F.3d 232, 239 (4th Cir. 2019) (holding that drug conspiracy offenses under 21 U.S.C. § 846 are not categorically controlled substance offenses for the purposes of applying the career offender Guideline).[1]  Davis indicated that he had exhausted all his administrative remedies prior to filing the motion because he requested relief from the warden but received no response after thirty days.  He asserted that his release was justified under the § 3553(a) factors because the conduct underlying the offense of conviction was not particularly severe, he no longer posed a danger to the public, and he had completed several rehabilitation

---

[1] Although Appellant Davis first cited *Norman* in his initial February 2021 pro se motion for compassionate release, J.A. 214, Davis clarified and expanded the *Norman* argument in his motion to amend or correct his motion for compassionate release, filed in May 2021.  J.A. 233.

programs since his sentencing.  The government opposed the motion, arguing in part that Davis's change-in-law arguments sounded in habeas and therefore were not cognizable as a justification for compassionate release.

The district court (the same judge who originally sentenced Davis) denied the motion.  The court found that Davis failed to show extraordinary and compelling reasons for release based on the pandemic because he did not make a significant showing of a particularized susceptibility to COVID-19 or a particularized risk of contracting the disease while in prison.  The court noted Davis's health conditions but concluded that they were not particularly severe given that Davis was 46 and fully vaccinated.

The district court likewise rejected Davis's career offender argument, finding that § 2255 was the appropriate vehicle for Davis to request relief on this basis.  And even if Davis had shown the necessary extraordinary and compelling reasons for relief, the court maintained that his release would not be justified under the § 3553(a) factors.  The court noted that Davis had only served half of his sentence and determined that 210 months' imprisonment remained necessary to reflect the seriousness of his crimes and the risk of recidivism.[2]

---

[2] In its memorandum order, the district court *sua sponte* raised the question of whether Davis properly exhausted his remedies.  J.A. 296–97.  The government did not raise this issue below.  In *United States v. Muhammad*, we held that § 3582(c)(1)(A)'s exhaustion requirement is a "non-jurisdictional claim-processing rule" that can be waived or forfeited if not timely raised.  16 F.4th 126, 130 (4th Cir. 2021).  Thus, the government has waived the issue of exhaustion, and it is not a barrier to remand.

Davis timely noted an appeal. He remains incarcerated at FCI Talladega. If Davis were sentenced today, his guidelines range would be 92 to 115 months—about half of his 210-month sentence.

## II.

We review a district court's ruling on a motion for compassionate release for abuse of discretion. *United States v. Kibble*, 992 F.3d 326, 329 (4th Cir. 2021). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Jenkins*, 22 F.4th 162, 167 (4th Cir. 2021) (quoting *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018)). In determining whether a district court has abused its discretion, we presume "that the district court sufficiently considered relevant factors in deciding a [§] 3582(c)(2) motion" or a § 3582(c)(1)(A) motion. *United States v. Martin*, 916 F.3d 389, 396 (4th Cir. 2019) (citing *United States v. Legree*, 205 F.3d 724, 729–30 (4th Cir. 2000)). However, we consider de novo whether a court ruling on a compassionate release motion must provide an individualized explanation. *Martin*, 916 F.3d at 395.

## III.

We begin with some background. Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, Congress created an exception to that general rule when "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). Until the passage of the First Step Act in

5

2018, district courts could only entertain motions for compassionate release filed by the Bureau of Prisons (BOP). *High*, 997 F.3d at 185 (quoting 18 U.S.C. § 3582(c)(1)(A) (2002)). The First Step Act amended § 3582(c) to allow incarcerated persons to file their own motions for compassionate release after first requesting that the BOP move for compassionate release and waiting thirty days for the BOP to act. *See* First Step Act, Pub. L. 115-391 § 603(b), 132 Stat. 5194, 5339 (2018); *see also* 18 U.S.C. § 3532(c)(1)(A); *United States v. Ferguson*, 55 F.4th 262, 267–69 (4th Cir. 2022) (explaining that an appeal of the BOP's refusal to move for compassionate release requires exhaustion of administrative remedies). Section 3582(c)(1)(A) requires a district court first to find "extraordinary and compelling reasons" warranting a sentence reduction. Then, after considering any appropriate § 3553(a) factors, the court must determine whether the requested reduction in sentence is consistent with "applicable policy statements issued by the Sentencing Commission." *Jenkins*, 22 F.4th at 169; *Kibble*, 992 F.3d at 330-32.

But until recently—well after the district court in this case entered its order—there were no applicable policy statements to reference. This Court acknowledged that void, noting that "there is no applicable policy statement governing compassionate release motions filed by defendants." *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020); *see also Jenkins*, 22 F.4th at 169. Given this lack of guidance from the Commission, courts looked to relevant sentencing guidelines provisions to evaluate whether a motion presented an extraordinary and compelling circumstance warranting a sentence reduction. *See Jenkins*, 22 F.4th at 169–70; *see also United States v. High*, 997 F.3d 181, 187 (4th Cir. 2021).

6

In May 2023, the Sentencing Commission, having finally achieved a quorum, promulgated amendments to U.S.S.G. § 1B1.13, the section that governs § 3582 and discusses the contours of "extraordinary and compelling" reasons. 88 Fed. Reg. 28254 (May 3, 2023). That guidance reinforced that a defendant's increased risk of suffering complications or death from exposure to disease during a public health emergency can be an extraordinary and compelling reason for release.

Further, the amendment provides that if a defendant "received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason." *Id*. However, this consideration only applies where such a change in law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." *Id*.

If the intervening change in law would not produce a gross disparity, a defendant cannot rely on the change in law as an extraordinary and compelling reason for release. However, "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id*. Thus, if Davis can present another extraordinary and compelling reason but does not otherwise meet the criteria for an "unusually long sentence," the court can still use the change in law to determine how much to reduce his sentence.

7

The district court did not have the benefit of the Sentencing Commission's guidance when it denied Davis's compassionate release motion. Nonetheless, the district court was on notice that "gross" sentencing disparities due to changes in law can be extraordinary and compelling reasons for compassionate release. In *McCoy*, which predates the amendments to § 1B1.13, this Court held that a district court may treat "the disparity of defendant's § 924(c) sentences and those provided under the First Step Act" as "extraordinary and compelling reasons for compassionate release." 981 F.3d at 285–86. *McCoy* thus indicated that disparities between nonretroactive, correctly calculated, pre-First Step Act sentences and the sentences defendants would have received post-First Step Act are properly considered as "extraordinary and compelling" reasons. Further, Section 3582(c)(2), which also predates the § 1B1.13 amendments, explicitly provides that a district court may reduce a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *Martin*, 916 F.3d at 395. Together, *McCoy* and Section 3582(c) indicated that changed legal circumstances may sometimes provide a basis for compassionate release.

## IV.

Davis presents two issues on appeal. First, he argues that the district court abused its discretion in concluding that he failed to show extraordinary and compelling reasons for his compassionate release. He offered three reasons that he's entitled to compassionate release: (1) his type-2 diabetes and hypertension made him particularly susceptible to COVID-19; (2) intervening changes in law would result in a lower sentence if he were

8

sentenced today; and (3) his rehabilitation efforts have been effective and extraordinary. Second, he argues that the district court erred in concluding that he did not merit a sentence reduction under the § 3553(a) factors without first addressing each of Davis's arguments.

Taking each argument in turn, we find Davis's argument regarding his susceptibility to COVID-19 unpersuasive. However, we agree that the district court did not properly address Davis's arguments regarding intervening changes in law and rehabilitation.

A.

Davis first argues that the district court abused its discretion in finding that the COVID-19 pandemic was not an extraordinary and compelling reason for his release. To establish that the risk posed by COVID-19 presents an extraordinary and compelling reason for release, the defendant must allege that the risk of contracting COVID-19 is higher in prison than outside of it, and that his preexisting conditions increase the risk of experiencing a serious or fatal case of the virus. *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *see also High*, 997 F.3d at 185. Although this "inquiry is multifaceted and must account for the totality of relevant circumstances," *Bethea*, 54 F.4th at 832 (internal quotation marks omitted), courts examine whether the movant "shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility." *Hargrove*, 30 F.4th 189, 196 (4th Cir. 2022) (cleaned up).

Davis asserts that his diagnoses of type-2 diabetes and hypertension constituted the sort of particularized susceptibility required by law. The district court acknowledged Davis's medical history but found that that history did not present extraordinary circumstances for relief. The court determined that Davis's relatively young age of 46 and his full vaccination

9

status undermined his claim that he was especially susceptible to serious illness from the pandemic. That call was squarely within the court's discretion. This Circuit has previously declined to treat similar ailments as extraordinary in the context of the pandemic. *See U.S. v. Hargrove*, 30 F.4th at 196 (upholding district court's determination that defendant's asthma and high blood pressure did not present extraordinary and compelling reasons for his release during the pandemic); *see also Brown*, 78 F.4th at 129 (agreeing that defendant's obesity and high blood pressure did not show that he had a particularized risk of contracting COVID when defendant refused the vaccine without grounds).

Davis particularly takes umbrage at the district court's emphasis on his vaccination status as a mitigating factor for his vulnerability to serious illness. But district courts enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor. *See, e.g.*, *United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021) (stating that a requirement to equally weigh factors "would . . . toss our deferential abuse-of-discretion review to the winds"). Given this deferential standard of review, we cannot find that the district court abused its discretion in denying compassionate release based on Davis's susceptibility to COVID-19.

## B.

Second, Davis contends that the district court abused its discretion by failing to consider whether his career-offender-status claim was an extraordinary and compelling reason for release. Years after Davis was sentenced, this Court held that the generic definition of conspiracy must include an overt act. *United States v. McCollum*, 885 F.3d 300, 308–09 (4th Cir. 2018). Later, in *United States v. Norman*, this Court relied on that decision to find that a

10

21 U.S.C. § 846 conspiracy conviction (*i.e.*, Davis's offense of conviction) is not categorically a "controlled substance offense" for purposes of the career offender guidelines because it does not require an overt act. 935 F.3d at 237–40. Thus, if Davis were sentenced after *Norman*, he would no longer be designated a career offender because his § 846 conspiracy conviction would not qualify for the career offender enhancement. However, once a career offender status is imposed, it cannot be retroactively altered.

In addition, Davis's motion presented a second intervening change in law that would further reduce his sentence if he were sentenced today. Amendment 782 of the Sentencing Guidelines, added in 2014, lowered the base offense level for Davis's § 846 conviction by two points. This reduction was retroactive. Because Davis was considered a career offender when his sentence was imposed, he was sentenced according to U.S.S.G. § 4B1.1 ("Career Offender"), not § 2D1.1(c) ("Unlawful Manufacturing, Importing, Exporting, or Trafficking"). Today, Davis would not be sentenced as a career offender. Therefore, the court would now sentence him under § 2D.1.1(c), making him eligible for the retroactive two-point reduction. But because he was not sentenced under that guideline but as a career offender under § 4B1.1 (a designation cannot be retroactively altered), he cannot seek that reduction.

The court failed to indicate that it considered this argument in its order denying the motion. Instead, it concluded that Davis's change-in-law claim was not an extraordinary and compelling reason for relief because 28 U.S.C. § 2255, the federal habeas statute, was "the appropriate vehicle for Defendant to request the sought-after relief." J.A. 298. It is true that a defendant cannot challenge the validity of a conviction or sentence in a compassionate release motion. *See United States v. Ferguson*, 55 F.4th 262, 269–72 (4th Cir. 2022). "[N]o

11

matter how an inmate characterizes his request for relief, the substance of that request controls. If in substance he attacks his conviction and/or sentence, his filing is subject to the rules set forth in § 2255," which bars second or successive habeas petitions. *Id*. at 270.

Yet Davis's pro se motion does not attack the validity of his sentence. His original motion requests only compassionate release or a sentence reduction. J.A. 201. He does not claim that a mistake was made during his original sentencing, and, as a result of that mistake, the sentence imposed was too long. Instead, he says that subsequent changes in the law mean that, if sentenced today, his term of imprisonment would be substantially shorter. As such, Davis's motion does not sound in habeas, as the district court claimed.

We now grapple with whether a change in law can constitute an extraordinary and compelling reason for compassionate release. *McCoy* said that it can. "[T]he very purpose of § 3582(c)(1)(A) is to provide a safety valve that allows for sentence reductions where there is not a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify a reduction." *McCoy*, 981 F.3d at 287 (cleaned up).

The Supreme Court's decision in *Concepcion v. United States*, 597 U.S. 481 (2022), further confirms that changes in law are fair game in compassionate release motions. In *Concepcion*, the defendant received a 19-year prison sentence under the Anti-Drug Abuse Act of 1986, which established a 100 to 1 sentencing disparity between the drug weight of crack and powder cocaine. *Id*. at 487. Ten years later, the defendant petitioned for a sentence reduction under Section 404 of the First Step Act. *Id*. at 488. Among other things, Concepcion argued that he should receive a reduced sentence because, if sentenced at the time of the motion, he would no longer be considered a career offender. *Id*. at 489. The

12

district court denied relief, reasoning that courts could not consider intervening legal developments in First Step Act proceedings. On appeal, Concepcion contended that the district court erred by declining to consider those changes of law. *Id*.

The Supreme Court sided with the petitioner. The Court reasoned that "[b]ecause district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them." *Id*. at 487. It went on: "It is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained . . . ." *Id*. at 486–87. And the majority observed that "Congress is not shy about placing such limits where it deems them appropriate." *Id*. at 494. *See, e.g.*, *Tapia v. United States*, 564 U.S. 319, 326–28 (2011) (holding that Congress barred judges for considering rehabilitation needs in support of an increased prison sentence); *see also* 18 U.S.C. § 3583(c) (barring courts from considering the need for retribution in imposing terms of supervised release).

Congress also has not been silent regarding compassionate release motions. As previously discussed, Congress expressly cabined district courts' discretion by requiring courts to follow the Sentencing Commission's policy statements. Until May 2023, those policy statements neither limited that which could be "extraordinary and compelling" nor barred consideration of changes in law.

*Concepcion*'s broad reasoning permits federal judges to think expansively about what constitute "extraordinary and compelling reasons" for release, absent specific

13

congressional limitations. And the Sentencing Commission's latest guidance goes a long way to resolve any remaining questions of congressional intent not answered by the Supreme Court's decision.

With that being said, neither *Concepcion* nor the new amendments to U.S.S.G. § 1B1.13 existed when the district court denied Davis's motion. Like many courts across the country, the district court likely found the Commission's old policy statement on compassionate release outdated after the First Step Act and was forced to operate without Commission guidance. We cannot hold this against the court. However, the district court did not account for this Court's decision in *McCoy*, which already explained that district courts could consider any extraordinary and compelling reasons for release raised by a defendant. 981 F.3d at 284. *Concepcion* and the latest policy statement serve to confirm and amplify this Court's earlier ruling. Nonretroactive changes in law remain relevant when a court has to decide when and how to modify a sentence. *Concepcion*, 597 U.S. at 494; *see also McCoy*, 981 F.3d at 268. As such, the district court should have considered Davis's argument that he no longer qualifies as a career offender, and it abused its discretion when it failed to do so. It now falls on the district court to revisit Davis's arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction.

C.

Davis also argues that his post-conviction rehabilitation and stable reentry plan presented an "extraordinary and compelling" reason for his release. When he filed his initial motion seeking compassionate release, Davis had been incarcerated for 96 months.

14

By all accounts, he was a model inmate during that time, receiving no infractions and completing ten education courses. He likewise took steps toward self-improvement, finishing a drug education course, participating in a cognitive skills group, excelling in a paralegal studies program, and receiving a promotion at his job.

The district court did not directly address these rehabilitation arguments as they pertain to the "extraordinary and compelling" analysis. "[I]n the Fourth Circuit, when evaluating the sufficiency of a sentencing court's explanation, there is a presumption that the district court sufficiently considered relevant factors in deciding a [compassionate release] motion." *Martin*, 916 F.3d at 396 (citing *United States v. Legree*, 205 F.3d 724, 729-30 (4th Cir. 2000)). But defendants can overcome this presumption by presenting evidence of rehabilitation that was not available at their original sentencing hearing. *Id*.; *McDonald*, 986 F.3d 402, 411 (4th Cir. 2021). Here, Davis did exactly that. Davis submitted letters from the Blackstone Career Institute commending him for his work in their paralegal studies course. J.A. 198. His unit manager at work also provided a letter, noting that Davis had "distinguished himself on multiple occasions" and had been a "positive influence on his fellow co-workers." J.A. 291. "While a district court is still empowered in its discretion to consider the facts of Appellants' original transgressions, the district court must also at least weigh [Davis's] conduct in the years since [his] initial sentencing[]." *McDonald*, 986 F.3d at 412.

Citing 28 U.S.C. § 994(t), which generally directs the Sentencing Commission to provide guidance on "extraordinary and compelling reasons," the government contends that a district court can only consider rehabilitation in its § 3553(a) analysis, not in its

15

"extraordinary and compelling reasons" analysis. This argument is unavailing. While Congress did specify that rehabilitation *alone* cannot be considered an extraordinary and compelling reason for release, it may be considered as one factor among several under § 3582(c)(1)(A). *McCoy*, 981 F.3d at 286 n.9; *see also* 88 Fed. Reg. 28254 ("Rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."). The new policy statement reiterated this principle, but the district court already had sufficient guidance prior to its publication. When no applicable policy statement limits the discretion of the court, "courts may make their own independent determinations of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)." *McCoy*, 981 F.3d at 284 (cleaned up). The district court therefore abused its discretion in overlooking Davis's evidence of rehabilitation.

## D.

Even if a district court abuses its discretion in assessing whether the defendant presents extraordinary and compelling reasons for release, this Court may still affirm if the district court's consideration of the § 3553(a) factors was sound.[3] *High*, 997 F.3d at 186–87. District courts are not required to acknowledge and address each of the defendant's

---

[3] The § 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the need for the sentence imposed" to "provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training," § 3553(a)(2), and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6).

arguments on the record when conducting a § 3553(a) analysis. *Id*. at 189. In their reasoning, a sentencing judge "need only 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Chavez-Meza v. United States*, 585 U.S. 109, 113 (2018). Still, in more complex cases, "more explanation [than a cursory analysis] may be necessary." *Id*. at 116; *see also High*, 997 F.3d at 190. This is one such case.

Here, the district court incorporated by reference the § 3553(a) analysis conducted at Davis's sentencing several years earlier, citing his prior convictions and risk of recidivism. The court then opined that Davis's criminal history presents a risk of recidivism because he committed the offense of conviction after having previously served seventy-two months in prison. "Notably," the court pointed out, "Defendant's prior felony convictions . . . required his categorization as a career offender." J.A. 299–300.

In *Chavez-Meza v. United States*, the Supreme Court considered whether district courts were required to provide a detailed explanation of the reasons underlying the denial of a sentence reduction pursuant to the compassionate release statute. 585 U.S. 109 (2018). There, petitioner sought a sentence reduction under the compassionate release statute. *Id*. at 114. The district court granted that reduction, but not by the amount requested. In doing so, the district court entered only a form order stating that it had considered the petitioner's motion and the § 3553(a) factors in reducing petitioner's sentence. *Id*.

The Supreme Court upheld the court's use of a form order. It explained that the record of the initial sentencing illuminated the reasons why the court reduced the sentence by less than the petitioner requested. *Id*. at 115–16. But the Court made clear that its

17

holding did not mean that courts never had to provide more detailed explanations of their compassionate release decisions. "It could be that, under different facts and a different record, the district court's use of a barebones order in response to a motion like petitioner's would be inadequate . . . [T]he courts of appeals are well suited to request a more detailed explanation when necessary." *Id*. at 119.

Subsequent cases within this Circuit add color to *Chavez-Meza*. In *Martin*, two appellants sought compassionate release based on substantial records of post-sentencing mitigation evidence. 916 F.3d at 389. Without addressing that mitigating evidence, the district court denied one motion and gave only a small reduction on the other, based on the § 3553(a) factors. *Id*. at 393–95. This Court acknowledged *Chavez-Meza* but nonetheless held that the district court improperly failed to consider appellants' evidence. We said that, due to the nature and volume of evidence presented by appellants, the district court erred in failing to provide an individualized explanation for why that evidence was unconvincing. *Id*. at 397–98. Instead, the district court was "content to memorialize [appellant's] past transgressions without giving any weight to the multitude of redemptive measures" that appellants took since their sentencings. *Id*. at 397. Later, in *McDonald*, the Court extensively referenced *Martin* to reverse a district court's denial of compassionate release on much the same basis. 986 F.3d at 412.

However, in *High*, this Court affirmed the district court's denial of compassionate release. 997 F.3d at 183. High filed his motion for release only sixteen months after his sentencing. *Id*. And he filed the motion before the judge who initially sentenced him. Should the district court have granted his desired sentence reduction, High's term of imprisonment would have been reduced by approximately two-thirds. *Id*. at 187. The

18

district court thus found that the § 3553(a) factors governing the original sentence remained unchanged. *Id*. at 189. This Court affirmed. Unlike the appellants in *Martin* and *McDonald*, the Court explained, High's post-sentencing mitigation evidence was more limited. *Id*. at 190. In large part, High lacked a similar "mountain of new mitigating evidence" because the time that elapsed between his sentence and his motion was a tiny fraction of the "nearly two decades" that had elapsed in both *Martin* and *McDonald*. *Id*. (quoting *Martin*, 916 F.3d at 396). *See also Jenkins*, 22 F.4th at 172 (finding the court adequately explained its denial where the defendant did not present post-sentencing mitigation evidence, and the judge was also the sentencing judge).

In both length of incarceration and evidence of rehabilitation, the case before us rests somewhere between *Martin* and *High*. Like in *High*, the district judge who ruled on Davis's compassionate release motion was the same judge who originally sentenced him. And Davis's tenure in prison was about a decade shy of the appellants' lengths of incarceration in *Martin* and *McDonald*. Davis offered the court more mitigation evidence than did High, though his letters admittedly fell short of the mountain of evidence presented by appellants in *Martin*.

Nonetheless, *Martin* and *McDonald* are more on point. As in *Martin*, Davis "submitted documentary evidence that corroborat[ed] [his] coursework and good behavior," including a glowing letter from his employer that spoke to his character and desire for self-improvement. *Martin*, 916 F.3d at 396. And although Davis's judge was also the sentencing judge, the ten-year gap between proceedings (compared to the short nineteen-month gap in *High*) allowed for both foreseeable and unforeseeable changes in circumstances during the

19

interim. This possibility strengthens the argument that the judge needed to offer more than a mere recitation of Davis's original criminal behavior. *See id*. at 397.

In Davis's case, a great deal did change before he moved for compassionate release. Some of those changes were considerable. As Davis engaged in the rehabilitation opportunities available to him, the legal landscape shifted. In 2014, the Sentencing Commission promulgated Amendment 782, which could have reduced Davis's base offense level by two points had he not been sentenced as a career offender. *See* U.S.S.G. App. C, amend. 782 (effective Nov. 1, 2014). Five years later, this Court's decision in *Norman* clarified that, if Davis was sentenced today, he would not be subject to that career offender status. *Norman*, 935 F.3d at 239.

If applied in a new sentencing today, these changes would lower Davis's guidelines range from a 188–235 months range to 92–115 months range. Had that been the guidelines range in 2013, it is very likely that Davis would already be out of prison. That reality alone implicates one of the applicable sentencing factors: "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This sentence disparity is so stark, and the change in law so substantial, that Davis's case is not the sort of simple case described in *Chavez-Meza*. 585 U.S. at 113. *Chavez-Meza* reassured us that "courts of appeals are well suited to request a more detailed explanation when necessary." *Id*. at 119. We find that such action is necessary here.

## V.

For the foregoing reasons, we conclude that the district court abused its discretion by declining to address Davis's change-in-law and rehabilitation arguments in its

20

"extraordinary and compelling reasons" analysis.  We also find that, given the mitigation evidence Davis supplied, the substantial changes in law between the original sentencing and today, and the potentially gross sentencing disparity created by those changes, the district court's explanation of the § 3553(a) factors is insufficient. However, we find that the district court did not abuse its discretion in denying Davis's motion due to his asserted susceptibility to COVID-19.

We also recognize that the Sentencing Commission's new policy statement set forth guidelines for considering changes in law that were not in effect when the court denied Davis's motion.  Application of that new guidance requires a factual inquiry that the district court should conduct in the first instance.

In addition, remand is appropriate in light of the tremendous shift in the legal landscape that occurred between the order on appeal and now.  *See United States v. Love*, 849 F. App'x 417, 418 (4th Cir. 2021) (unpublished) (vacating and remanding "because the district court did not have the benefit" of intervening Circuit decisions); *United States v. Diaz*, 546 F. App'x 281, 282 (4th Cir. 2013) (unpublished) (same); *Hanick v. Duncil*, 135 F.3d 769 (4th Cir. 1998) (table) (same).

Therefore, we vacate the district court's denial of Davis's § 3582(c)(1)(A) motion and remand this matter for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED AND REMANDED IN PART*

21

RUSHING, Circuit Judge, dissenting:

The same judge who originally sentenced Antonio Davis to 210 months in prison for his part in a heroin distribution conspiracy subsequently denied Davis's motion for compassionate release after concluding that the sentencing factors in 18 U.S.C. § 3553(a) continued to warrant a 210-month sentence. I would affirm.

Even if a federal prisoner is eligible for a sentence reduction based on "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(i), the district court "has discretion to grant or deny relief based on its assessment of the salient § 3553(a) factors," *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022). Similarly, this Court can affirm a district court's compassionate release decision "regardless of a flaw in the eligibility analysis" if the court's "§ 3553(a) assessment was sound." *Id.* at 833; *see also United States v. High*, 997 F.3d 181, 187 (4th Cir. 2021). "District courts enjoy broad discretion in evaluating the § 3553(a) factors when deciding a motion for compassionate release." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024) (internal quotation marks omitted). We review the district court's decision only for abuse of that discretion. *United States v. Kibble*, 992 F.3d 326, 329 (4th Cir. 2021) (per curiam).

Procedurally, district courts must "*consider* the parties' arguments" with respect to a sentence modification but need not "invariably *acknowledge and address* each of the [movant's] arguments on the record." *High*, 997 F.3d at 189; *see also Centeno-Morales*, 90 F.4th at 279. Absent a contrary indication, the district court's consideration of "'issues that have been fully presented for determination . . . is implicit in the court's ultimate ruling.'" *United States v. Legree*, 205 F.3d 724, 728 (4th Cir. 2000) (quoting *United States*

22

*v. Davis*, 53 F.3d 638, 642 (4th Cir. 1995)). That presumption applies with particular force "'when the same judge who sentenced the defendant rules on the compassionate release motion.'" *Centeno-Morales*, 90 F.4th at 279 (quoting *Bethea*, 54 F.4th at 834). When the sentencing judge "'assesses the § 3553(a) factors again for compassionate release purposes, there's a strong indication that the judge knows of the defendant's circumstances, both favorable and unfavorable, and considers the totality of the record when assessing whether a different sentence is now warranted.'" *Id.* (quoting *Bethea*, 54 F.4th at 834).

Here, the same judge who sentenced Davis in 2013 considered his arguments for compassionate release and concluded that his original sentence of 210 months' imprisonment remained necessary "to reflect the seriousness of the offense, and to protect the public from further crimes of the Defendant." J.A. 299. The court first incorporated by reference the reasons given at Davis's sentencing and explained that reducing his sentence "would disserve these important § 3553(a) factors, especially considering he has only served half of his sentence." J.A. 299. The court elaborated that Davis's crime was "rather serious" and his criminal history "presents a risk of recidivism." J.A. 299. Expanding on Davis's recidivism risk, the court explained that he committed the present offense after having recently served 72 months in prison for attempted robbery and use of a firearm, and he also had an earlier felony conviction for attempted murder. Ultimately, the court found that Davis "continues to present a danger to the safety of the community," making compassionate release inappropriate. J.A. 300.

This explanation was sufficient to demonstrate that the district court "'*considered the parties' arguments and ha[d] a reasoned basis* for exercising [its] own legal

23

decisionmaking authority,' so as to 'allow for meaningful appellate review.'" *High*, 997 F.3d at 190 (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018)).  The court's reasoning disposed of every argument Davis advanced.  *Cf. Concepcion v. United States*, 142 S. Ct. 2389, 2404–2405 (2022) (reiterating that a district court is not required "to expressly rebut each argument made by the parties" but need only "demonstrate that it has considered the arguments before it" (internal quotation marks omitted)).  Earlier in its opinion, the district court acknowledged Davis's position that, if he were sentenced today, his Guidelines range would be lower because he would not be classified as a career offender.  In assessing the § 3553(a) factors, the court nevertheless reasoned that Davis's offense and his criminal history both remained serious and a sentence outside "the range of [210] months" was inadequate to reflect the present-day seriousness of his heroin conspiracy offense and protect the public from further crimes.  J.A. 299.

The district court also implicitly rejected Davis's claim of post-sentencing rehabilitation when it concluded that he "continues to present a danger to the safety of the community."  J.A. 300; *see United States v. Mangarella*, 57 F.4th 197, 203–204 (4th Cir. 2023) ("[O]mission [of an argument] does not by itself establish that the district court failed to *consider* [it], at least implicitly, in weighing the § 3553(a) factors.").  We have repeatedly found this type of explanation sufficient in cases with similarly sparse rehabilitation evidence.  *See Centeno-Morales*, 90 F.4th at 281 (concluding evidence of "a few vocational courses" and only "two disciplinary infractions" did not require robust and detailed explanation); *High*, 997 F.3d at 190 (same, regarding evidence of completed prison courses and clean disciplinary record); *United States v. Hargrove*, 30 F.4th 189, 191–192,

24

199–200 (4th Cir. 2022) (same, regarding evidence of clean disciplinary record and participation in various prison programs); *see also United States v. Johnson*, No. 22-6035, 2022 WL 13888725, at *2 (4th Cir. Oct. 24, 2022) (per curiam); *United States v. Rozelle*, No. 21-6901, 2023 WL 6619539, at *4 (4th Cir. Oct. 11, 2023) (per curiam); *United States v. Bass*, No. 20-7561, 2023 WL 4105711, at *1 (4th Cir. June 21, 2023) (per curiam).  As has the Supreme Court.  *Chavez-Meza*, 138 S. Ct. at 1967 (holding that the district court's disposition of a sentence reduction motion via "a barebones form order" sufficiently addressed the movant's argument regarding "various educational courses he had taken in prison").

The majority asserts that this case is like *United States v. Martin*, where more explanation was required because the district court had "failed to address any" of the movants' "mountain of new mitigating evidence."  916 F.3d 389, 396 (4th Cir. 2019).  But *Martin*'s requirement for "'a more robust and detailed' explanation" in response to substantial evidence of post-sentencing rehabilitation "is the exception, not the rule." *Centeno-Morales*, 90 F.4th at 281 (quoting *Martin*, 916 F.3d at 396).  And that exception does not apply here.

The entirety of Davis's rehabilitation argument to the district court was that he "is now 45 years old," maintained a "clean disciplinary record" for his 8 years in custody, "ha[d] obtained numerous certificates and qualifications" which he did not specify, and had "enroll[ed] in" a paralegal studies program.  J.A. 210–211.  For evidence, he presented (1) letters showing he had enrolled in a paralegal certificate program and completed at least

25

some coursework, and (2) a letter from a prison factory manager praising Davis's work ethic and attitude during his two years of prison employment.

By contrast, in *Martin*, both movants were elderly prisoners who had amassed uncommonly significant rehabilitation records in their decade of incarceration. *See, e.g.,* *Martin*, 916 F.3d at 397 ("The Government . . . conceded that Martin's post-sentencing behavior is among the best that it has seen."). For example, one movant earned her GED, became a respected tutor for other inmates, and displayed such exemplary behavior that correctional staff moved her into a low security facility. *Id.* at 396. The other movant created an educational tool to help his fellow inmates and demonstrated such trustworthiness that he was moved to a minimum-security facility and allowed to work outside the prison compound. *Id.* at 397. We vacated and remanded the district court's judgments because this "significant evidence of mitigation" required some acknowledgement and explanation from the district court. *Id.* at 397–398.

Similarly, in *United States v. McDonald*, we remanded three movants' cases for further explanation where "each of the district court's orders merely included a single checkmark 'granting' the [sentence-reduction] motion and a single sentence noting" the extent of the reduction. 986 F.3d 402, 412 (4th Cir. 2021). The movants had presented "extensive" rehabilitative evidence spanning almost two decades, including "that they obtained their GEDs, undertook significant coursework, engaged in prison programming, . . . earned good time credit for their good behavior, and earned low levels of security clearance." *Id.* at 411. Relying on *Martin*, we concluded that some explanation of the district court's reasons for its sentence reduction decisions was necessary. *Id.* at 412.

26

Davis is not similarly situated to the movants in *Martin* and *McDonald*. Despite his good disciplinary record, Davis is a medium-security inmate and the Bureau of Prisons has assessed his risk of recidivism as high. Although his prison employment record and coursework are positive, they are "much more similar to the 'various educational courses'" of *Chavez-Meza* (and the clean disciplinary record and educational courses in *High*) than "to the exceptional post-sentencing conduct of the defendants in *Martin* and *McDonald*." *High*, 997 F.3d at 190. Most importantly, the district court here did not "leave [us] in the dark as to the reasons for its decision." *Martin*, 916 F.3d at 398. The court issued a reasoned opinion explaining that Davis's 210-month sentence remains appropriate because of the seriousness of his crime, his long and violent criminal history, his risk of recidivism, and the continuing danger he poses to the public. That ruling—by the same judge who sentenced Davis originally—fully resolved Davis's claim that his rehabilitation and intervening changes in sentencing law justified a sentence reduction.

The district court fulfilled its obligation "to demonstrate that it ha[d] considered the arguments before it" when ruling on Davis's motion for compassionate release. *Concepcion*, 142 S. Ct. at 2405; *see also United States v. Reed*, 58 F.4th 816, 823 (4th Cir. 2023) (calling this requirement "a low bar"). No more was required. The majority concludes otherwise, so I must respectfully dissent.

27