**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 24-6365**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

IZA MAR ROSARIO-CRUZADO,

Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Michael F. Urbanski, Senior District Judge.  (5:19–cr–00004–MFU–JCH–1)

─────────────

Submitted:  February 28, 2025                          Decided:  May 30, 2025

─────────────

Before WYNN, RICHARDSON, and HEYTENS, Circuit Judges.

─────────────

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion, in which Judge Richardson and Judge Heytens joined.

─────────────

**ON BRIEF:**  Mary Maguire, Federal Public Defender, Erin Trodden, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Christopher R. Kavanaugh, United States Attorney, Jonathan Jones, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Iza Rosario-Cruzado challenges the district court's denial of her motion for compassionate release, which was predicated on her sister's inability to care for Rosario-Cruzado's minor daughter due to incapacitation. Rosario-Cruzado claims that the district court abused its discretion in two ways: (1) it improperly considered how her sister's condition affected her overall ability to engage in daily activities instead of her ability to care for Rosario-Cruzado's daughter; and (2) it improperly considered the possibility of an alternative caregiver. We disagree. Accordingly, we affirm the district court's denial of the motion for compassionate release.

I.

Rosario-Cruzado has been in custody since January 2018 when she was arrested on a state charge. In February 2019, a federal grand jury indicted her under 21 U.S.C. § 841(b)(1)(C) for distributing a mixture of heroin and fentanyl. The following year, the district court sentenced her to 168 months in prison.

Rosario-Cruzado has a minor daughter, Y.J.R., whose father—at least as of 2022—was also incarcerated. So, beginning in May 2018, Rosario-Cruzado's sister X.R. served as Y.J.R.'s caregiver.

In April 2022, however, X.R. sought emergency care for panic attacks. Her doctors prescribed medication for anxiety, and she entered counseling. Both treatments helped her cope with her anxiety, but the medication hindered her ability to carry out her responsibilities as a machine operator. Despite these difficulties, she was able to maintain her employment.

2

In July 2022, X.R. sent Y.J.R. to live with Rosario-Cruzado's mother, Ivonne, in Puerto Rico. In a letter to the district court, X.R. explained that her partner had recently moved to New Jersey to care for the mother of his children, and so X.R. did not have anyone to assist her with Y.J.R. Consequently, Y.J.R. would frequently have to be unsupervised at home after school. X.R. additionally reported concern about her job security because she could not always get permission to leave work to pick Y.J.R. up when she misbehaved at school. Following Y.J.R.'s departure, X.R.'s anxiety improved, but she still had occasional panic attacks.

In December 2022, Rosario-Cruzado moved for compassionate release, citing the incapacitation of X.R. as the caregiver for eleven-year-old Y.J.R. Under the relevant statute, the district court may grant a motion for compassionate release "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds that (as relevant here) "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *see United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022).

In a policy statement, the Sentencing Guidelines enumerate various circumstances which either by themselves or in combination may constitute "extraordinary and compelling reasons" warranting a sentence reduction, including "[t]he death or incapacitation of the caregiver of the defendant's minor child." U.S.S.G. § 1B1.13(b)(3)(A)

3

(policy statement). The district court determined that X.R. was not incapacitated and denied Rosario-Cruzado's motion for compassionate release.[1] Rosario-Cruzado timely appealed.

## II.

Rosario-Cruzado challenges the district court's finding on incapacitation on two grounds. We review that finding for an abuse of discretion. *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024). "A district court abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012).

## A.

First, Rosario-Cruzado argues that X.R.'s panic attacks amount to "incapacitation" for purposes of the applicable policy statement. We disagree.[2] It was not arbitrary for the district court to conclude that X.R. was not incapacitated because she had been receiving effective treatment to help alleviate her symptoms.

The Sentencing Guidelines do not define "incapacitation," but courts have generally understood the term to require severe impairment of an individual's ability to perform the

---

[1] While Rosario-Cruzado's motion for compassionate release was pending before the district court, Amendment 814 to the Sentencing Guidelines went into effect. *See* U.S.S.G. Supp. App. C. Amend. 814. Among other changes, this amendment moved the language about extraordinary and compelling reasons from the application notes into the text of the Guidelines and expanded the circumstances qualifying as extraordinary and compelling. The district court acknowledged this change in its opinion.

[2] Because this Court affirms the district court's conclusion that X.R. is not incapacitated, we need not reach the question of whether Rosario-Cruzado could obtain relief based on X.R.'s incapacitation when, at the time she filed her compassionate release motion, Y.J.R. had not been under X.R.'s care for months.

4

essential requirements of caring for a minor child. *See, e.g.*, *United States v. Lottier*, No. 7:16-cr-30, 2022 WL 1522220, at *3 (W.D. Va. May 13, 2022) ("[W]here a caretaker is struggling to care for a child, but not incapacitated, courts have denied compassionate release."); *United States v. Edmond*, No. 5:17-cr-398, 2021 WL 1234509, at *2 (E.D.N.C. Apr. 1, 2021) (finding incapacitation of a caregiver where caregiver had congestive heart failure and could no longer care for defendant's two minor children); *see also United States v. Plaketta*, No. 3:19-cr-1097, 2022 WL 17363886, at *3 (S.D. Cal. Dec. 1, 2022) ("[T]here is nothing in the record to indicate [defendant]'s spouse is incapacitated such that she has been rendered incapable of caring for herself or her minor children.").

A well-reasoned recent decision from the District of Massachusetts suggests that courts look to state guardianship law to help define "incapacitation." *United States v. Taveras*, 731 F. Supp. 3d 94, 99 (D. Mass. 2024). Here, Virginia law defines an "[i]ncapacitated person" as "an adult who . . . [is] incapable of receiving and evaluating information effectively or responding to people, events, or environments to such an extent that . . . [they cannot] meet the essential requirements for [their] health, care, safety, or therapeutic needs." Va. Code Ann. § 64.2-2000. And while Virginia's statutes do not provide a standard for the termination of guardianship over the person of a minor, *In re [Redacted]*, 106 Va. Cir. 380, 384–85 (Va. Cir. Ct. 2020) (observing that state law "provides for the termination of a guardian of the estate of a minor, but no similar provision exists for the termination of guardianship of a person of a minor"), when a minor of at least fourteen years old nominates their own guardian, the court determines whether the guardian nominated is "suitable and competent," Va. Code Ann. § 64.2-1703.

5

This Court and district courts have also referenced the Bureau of Prisons Program Statement for guidance.[3] *See United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022); *United States v. Mahone*, No. 5:12-cr-27, 2025 WL 495376, at *4 (W.D. Va. Feb. 13, 2025). The Program Statement at § 5050.50 defines an incapacitated caregiver as someone who has "suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child."

For the purposes of deciding the present appeal, this Court need not set out a precise definition of incapacitation. Under any of the definitions set forth above and those proffered by the parties, Rosario-Cruzado does not prevail. The district court observed that X.R. had learned how to manage her panic attacks in therapy and alleviate her anxiety. Rosario-Cruzado has not demonstrated that X.R. lacked capacity concerning her ability to care for her own daily needs or those of Y.J.R. In fact, X.R. received adequate treatment and was able to resume her usual schedule.

In short, the district court did not abuse its discretion when it determined that X.R. remained capable of caring for Y.J.R.

---

[3] To be sure, part of the legislative intent behind the First Step Act was to liberalize compassionate release by permitting incarcerated individuals themselves to file such motions and thus reducing the role of the Bureau of Prisons in evaluating them. *Taveras*, 731 F. Supp. 3d at 98–99. Regardless, it is proper for courts to consider the Bureau of Prison Program Statement as helpful guidance while keeping in mind that it might be more restrictive than the permissible standard for compassionate release.

6

B.

Second, Rosario-Cruzado argues that the district court erroneously relied on the availability of an alternate caregiver, Ivonne, as part of its evaluation of whether X.R. was incapacitated. Again, we conclude that the district court did not abuse its discretion.

Before the district court, Rosario-Cruzado argued that the structure of the Guidelines precluded the district court from considering Ivonne's availability in evaluating whether X.R. was incapacitated. The district court acknowledged this argument but concluded that it did not need to reach the issue because it concluded that Y.J.R. was not incapacitated without considering Ivonne's availability. *United States v. Rosario-Cruzado*, No. 5:19-cr-4, 2024 WL 2076161, *3 (W.D. Va. Apr. 12, 2024). On appeal, Rosario-Cruzado argues that the district court erred by nevertheless considering Ivonne's circumstances.

We disagree. The district court did not consider Ivonne's circumstances in evaluating whether X.R. was incapacitated. Rather, in her lower-court briefing, Rosario-Cruzado separately argued that "Ivonne's age and medical conditions" coupled with the fact that "Puerto Rico is likely to be a profoundly destabilizing and isolating experience for Y.J.R." gave rise to an extraordinary and compelling reason for release. J.A. 33.[4] The Guidelines permit a defendant seeking compassionate release to "present[] any other circumstance or combination of circumstances that . . . are similar in gravity to," for example, the caregiver-incapacitation circumstance. U.S.S.G. § 1B1.13(b)(5). And this

---

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

7

Court has determined that even after the 2023 Amendments courts may "think expansively about what constitute 'extraordinary and compelling reasons' for release, absent specific congressional limitations." *Davis*, 99 F.4th at 657–58. The district court's analysis of Ivonne's ability to care for Y.J.R. addressed Rosario-Cruzado's "other circumstances" argument about Ivonne's health. *See* J.A. 33; *Rosario-Cruzado*, 2024 WL 2076161, at *5. It was not an error for the district court to address the arguments raised before it.

### III.

While this Court is sympathetic to a mother's desire to care for her daughter during difficult circumstances, the district court did not abuse its discretion when it concluded that the circumstances presented are not "extraordinary and compelling" within the meaning of the Guideline. The judgment of the district court denying Rosario-Cruzado's motion for compassionate release is affirmed.

*AFFIRMED*